IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE SEARCH/SEIZURE OF:

Black LG cell phone; Serial Number
703VTXF261954; IMEI 355790-08-261954-2;
Model LGMS550; FCC ID ZNFK550BN

Magistrate No. 17-mj-947

## INTRODUCTION

I, Ryan J. Chrobak, being duly sworn, depose and state as follows:

1.  I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since June 2016. During that time, I have been assigned to an investigative unit dealing with organized crime, drug trafficking, gangs, and violent crimes. During my training at the FBI Academy in Quantico, Virginia, and the Federal Law Enforcement Training Center in Glynco, Georgia, I received extensive training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches and the legal requirements for the interception of telephone communications.

2.  As a Special Agent with the Federal Bureau of Investigation (FBI), I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3.      I have been involved in narcotics-related arrests and have handled cooperating sources of information who were involved in narcotics acquisition and/or trafficking. In addition, I have reviewed hundreds of communications between drug traffickers as a result of my participation in multiple wiretap investigations. As a result of my narcotics-related training and experience, I am familiar with the methods and language used to distribute narcotics, to launder proceeds, and to operate drug-trafficking conspiracies.

4.      Based on my experience and the experience of others, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute drugs, and to hide profits generated from those transactions. Based on my training and experience, I am aware that it is common practice for drug traffickers to conduct and facilitate drug-related activities through their cell phones, vehicles, residences, and other methods as well.

5.      As part of your affiants' duties as a Special Agent, and in the course of my participation in wiretap investigations, I have reviewed thousands of communications between drug traffickers. As a result of my narcotics-related training and experience, I am familiar with the methods and language used to distribute narcotics, to launder proceeds, and to operate drug-trafficking conspiracies.

6.      I am currently assigned as a Special Agent on the Greater Pittsburgh Safe Streets Task Force "GPSSTF", which is a group of federal, state, and local agencies that work together in the Pittsburgh area to focus efforts on violent crimes. In this capacity, I am currently participating in an investigation of Khalifa COCHRAN (COCHRAN). During the course of this investigation, I became aware that COCHRAN was arrested, in April 2017. Specifically, COCHRAN was arrested by members of the Pennsylvania Attorney General Bureau of Narcotics Drug Task Force

on April 18, 2017. This arrest was brought to my attention because it involved seizures of large amounts of fentanyl, consistent with that of a larger-scale drug trafficker.

7.      This Affidavit is submitted in support of a search warrant for one electronic device associated with COCHRAN. As more fully explained below, investigations believe that COCHRAN was involved in the packaging, diluting, and manufacturing of heroin and fentanyl in Pennsylvania. Accordingly, law enforcement has probable cause to believe that a search of this location will produce evidence of violations of federal felony offenses, including violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility) and 846 (conspiracy), as well as violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm), 924(c) (possession/use of a firearm in furtherance of a drug trafficking crime), 1956 and 1957 (money laundering).

8.      I have personally participated in the investigation outlined herein. In addition, I have reviewed information obtained from law enforcement and commercial databases, and discussed this case with and reviewed the reports of other law enforcement officers, who have been involved in this investigation, or who have investigated COCHRAN and his associates in the past. This Affidavit is being submitted for the limited and specific purpose of supporting an application for search and seizure warrants. I have not, therefore, included every fact I know concerning the investigation.

9.      On May 1, 2017, at Magistrate Nos. 17-413, 17-414, 17-415, 17-416 and 17-417, investigators obtained search warrants to access several electronic devices, including Search Location 1, seized from COCHRAN during the April 18, 2017 arrest. On May 3, 2017, a search warrant was executed on the Search Location with negative results, due to the inability of

investigators to bypass security settings imbedded on the device. The warrant was returned on June 9, 2017, with no items seized from the search location.

10. On July 3, 2017, an analyst working with the Allegheny County Police, Mobile Device/Computer Forensic Unit, informed me that new technology updates were available, and that he was able to retrieve information stored on the Search Location. Because the search warrant was already returned unexecuted, I am seeking a new search warrant for the Search Location.

11. As more fully explained below, there is probable cause to conclude that evidence of heroin and/or fentanyl trafficking, as well as evidence of money laundering, will be found in the cellular telephone of COCHRAN, which is the subject of this search warrant (hereafter occasionally referred to as the "Search Location"). As a result of my training and experience, I am aware that individuals involved in distributing illegal drugs commonly store or retain evidence of their involvement in drug trafficking on their cellular telephones, including but not limited to: incoming/outgoing call logs, contact lists, text messages, photographs, videos, and voicemails.

### SEARCH LOCATION FOR THIS AFFIDAVIT

12. Your Affiant is seeking a search warrant for the following location, currently in the custody of the respective seizing Agency (corresponding Agencies are in parentheses):

    a. **Seized from a 2017 Nissan Altima, PA registration KHB4697:**

        i. Search Location 1 – Black LG cell phone; Serial Number 703VTXF261954; IMEI 355790-08-261954-2; Model LGMS550; FCC ID ZNFK550BN (FBI Pittsburgh)

**EVIDENCE OF DRUG TRAFFICKING OFFENSES**

13.  I am aware, based on my training and experience, that the following types of evidence have been recovered from cellular telephone and computer searches, executed in connection with the investigation of drug trafficking and money laundering activities:

   a. incoming and outgoing call and text message logs

   b. contact lists

   c. photo and video galleries

   d. sent and received text messages, from all applications

   e. online searches and sites viewed via the internet

   f. online or electronic communications sent and received, including email, chat, and instant messages

   g. sent and received audio files

   h. navigation, mapping, and GPS files

   i. telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone

   j. call forwarding information

   k. messages drafted but not sent

   l. voice messages

14.  Based on my training and experience, as well as the collective knowledge and experience of other agents and officers associated with this investigation, I am aware that it is common practice for drug traffickers and their co-conspirators to routinely utilize telephones, mobile phones, prepaid phones, calling cards, public telephones, text messaging, counter surveillance, false or fictitious identities, and coded communications, to communicate with their

customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from detection by law enforcement. Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member, or in the name of a fictitious individual. These individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances, and for arranging the disposition of proceeds derived from the sale of controlled substances. Further, individuals involved in drug trafficking often take photographs of their illegal product, proceeds and other tools of the drug-trafficking trade, such as firearms and paraphernalia; these photographs are often taken with and stored on an electronic device, such as a cellular telephone.

15. Evidence of drug crimes can be found in the electronic media such as cellular telephones, electronic tablets, and personal computers. Such evidence can include internet searches for drug-related paraphernalia, addresses, telephone numbers and contacts, as well as incriminating communications via emails or instant messages. With the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling and text messaging, can now be performed from many cell phones. In addition, those involved in drug trafficking crimes commonly communicate using multiple cellular telephones and computers. Contemporaneous possession of multiple cellular telephones may be evidence of drug trafficking. Moreover, the particular numbers of, and the particular numbers dialed by, particular cellular telephones may be evidence of drug trafficking, particularly in a case involving the interception of communications between drug traffickers. Such numbers can confirm the identities of particular speakers and the occurrence of certain events. As

with most electronic/digital technology items, communications made from an electronic device, such as a cell phone, are often saved or stored on the device.

16. When drug traffickers amass proceeds from the sale of drugs, they often attempt to launder/"legitimize" these profits, or otherwise conceal them from discovery by law enforcement. In an effort to accomplish these goals, drug traffickers often place assets, such as vehicles, businesses, and residences, in the names of other persons to conceal their true ownership and the manner in which they were acquired. Electronic records reflecting the implementation of such deceptive practices, such as deeds, titles, and service records, may be stored in the electronic devices of the drug trafficker, their co-conspirators, or of the person in whose name the asset is listed.

17. Your Affiant's awareness of these drug trafficking practices, as well as your Affiant's knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: a) your Affiant's involvement in prior drug investigations and searches during his career, as previously described; b) your Affiant's involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised your Affiant of when relating the substance of their similar debriefings and the results of their own drug investigations; c) discussions with members of the FBI and/or other federal, state, and local law enforcement officers, both about the facts of this case in particular and about trafficking in general; and d) other intelligence information provided through law enforcement channels.

## BACKGROUND

18. On April 18, 2017, Task Force Officer (TFO) Rech with the Pennsylvania Attorney General's Bureau of Narcotics Drug Task Force and District Attorney Narcotics Enforcement

Team, and LOFT Agent Jena, received information of a potential delivery of a large amount of suspected fentanyl from a source of information (SOI). The SOI stated a black male, approximately 6'2" - 6'3" tall, weighing approximately 150 pounds, and who always wears a hat, would be making the delivery of fentanyl to a residence at the corner of Sterling Avenue and Eccles Street in the City of Pittsburgh, Allegheny County. The black male described was later identified as COCHRAN, date of birth October 5, 1980.

19.     The SOI stated that COCHRAN would be driving a white Kia SUV or a brown colored Nissan Altima. The SOI also stated that COCHRAN utilized a cellular telephone number of (412) 485-9930, to arrange narcotics transactions. Officers received information on the approximate time the suspected fentanyl would be delivered and established surveillance.

20.     At approximately 1840 hours, TFO's Wagner and Majors observed a brown colored Nissan Altima, bearing Pennsylvania registration KHB-4697, with a single black male driver, fitting the description of COCRAN, pass their surveillance location. LOFT Agent Jena observed the vehicle drive past his location and pull to the right side of Sterling Avenue at Eccles Street, the location advised by the SOI.

21.     Officers detained COCHRAN, and LOFT Agent Jena called the above-listed phone number (412-485-9930), as the SOI had informed investigators that COCHRAN was in possession of that phone. At that time, a black flip phone in the center console of the vehicle began to ring.

22.     LOFT Agent Jena asked COCHRAN if the Nissan Altima was his vehicle, and COCHRAN stated it was a rental. COCHRAN further stated the rental agreement was in the visor of the vehicle. Officers located a rental agreement for a Chevrolet Impala which was to be returned on April 17, 2017, at 1200 hours. City of Pittsburgh K9 unit was dispatched to the location of the vehicle to conduct an exterior sniff.

23. At approximately 1903 hours, City of Pittsburgh K9 officer Watts arrived with K9 narcotics detection partner and began an exterior sniff of the vehicle. While the K9 was conducting the sniff he spontaneously jumped into the open front driver window of the vehicle. The K9 then immediately went to the rear seat of the vehicle and indicated for the presence of narcotics. Officer Watts immediately gave verbal commands to remove the K9 from the vehicle as fast as possible. The vehicle was then towed to the Brentwood Police Station while officers obtained a search warrant for the vehicle.

24. At approximately 2106 hours, LOFT Agent Jena applied for and was granted a search warrant for the Nissan Altima, operated by COCHRAN. At approximately 2123 hours, officers located what was later determined to be approximately 105 grams of suspected fentanyl, inside of a McDonald's happy meal box, located in the rear passenger floor of the car. Based on training and experience, LOFT Agent Jena was able to identify the powder as suspected fentanyl, due to the whiteness of the powder. Also found in the happy meal box was another white powdery substance, that could be used to mix with the fentanyl as a cutting agent.

25. Also found and seized from the vehicle was the cellular telephone listed as search location one above.

26. As more fully explained at paragraphs 13-25 above, there is probable cause to believe that evidence of federal crimes will be found in the above Search Location, because evidence of drug trafficking is often found on the cellular devices of drug traffickers.

27. Here, the phone was located in the Nissan Altima, in close proximity to the suspected fentanyl and cutting agent. Further, the SOI provided information that COCHRAN conducts his drug business using telephone number (412) 485-9930, the possession of which was thereafter verified by LOFT Agent Jena. (*See* ¶ 21, *supra*).

28. Based upon the foregoing, including COCHRAN's arrest on April 18, 2017, and the recovery of suspected fentanyl and a cutting agent from the vehicle he was driving, there is probable cause to conclude that, in the Western District of Pennsylvania and elsewhere, COCHRAN has engaged in violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute a heroin/fentanyl); 843(b) (unlawful use of a telephone to facilitate the distribution of heroin and/or fentanyl); and 846 (conspiracy to distribute and to possess with the intent to distribute heroin and/or fentanyl), and violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm), 924(c) (possession/use of a firearm in furtherance of a drug trafficking crime), 1956 and 1957 (money laundering). Further, there is probable cause to believe that evidence of these crimes will be found on the search location listed above.

_____
Ryan J. Chrobak
Special Agent, FBI


Sworn and subscribed before me,
this 28th day of July, 2017.

_____
HONORABLE CYNTHIA R. EDDY
United States Magistrate Judge